UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

DAVID FRED MINIER,

          Plaintiff,          Case No. 1:21-cv-949

v.                                        Honorable Ray Kent

M. STEPHENS et al.,

          Defendants.
_____ /

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff initiated this action by filing suit in the United States District Court for the Eastern District of Michigan on August 26, 2021. On November 8, 2021, that court transferred the matter to this Court for further proceedings. (ECF No. 6.) This Court granted Plaintiff leave to proceed *in forma pauperis*. (ECF No. 10.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 11.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id*. at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id*. (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's "motion to have this Court order the Warden (Morrison) to hold all book[s] in question [regarding accompanying] lawsuit." (ECF No. 4.)

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Warden B. Morrison, Assistant Deputy Wardens T. Chrisman and R. Ault, Assistant Resident Unit Manager Unknown Cope, Resident Unit Manager S. Cline, Grievance Coordinator J. Rohrig, Mail Room employee M. Stephens, and Richard R. Russell of the MDOC's Office of Legal Affairs.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, __ F.4th ___, 2022 WL 322883, at *4–6, *4 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Plaintiff's complaint is completely devoid of facts setting forth how Defendants allegedly violated his constitutional rights. Plaintiff simply states that staff at LCF "failed to follow and [adhere to] policy and procedure." (ECF No. 1, PageID.10.) He states that the "mail rejection policy was not followed at any step[,] except [for the] mail room." (*Id.*) Plaintiff indicates that he received notices of mail rejection on March 9, 12, and 16, 2021, as well as May 5, 2021. (*Id.*, PageID.9.) Plaintiff suggests that he is raising claims regarding "right to due process/unfair treatment"; "failure to follow policy"; and "abus[e] of power." (*Id.*, PageID.7.) As relief, Plaintiff seeks "justice," reimbursement of his filing fees, and that the MDOC "must be made to follow [their] polic[ies] and procedures." (*Id.*, PageID.11.)

Plaintiff has also filed a "motion to have this Court order the Warden (Morrison) to hold all book[s] in question [regarding] accompanying lawsuit." (ECF No. 4.) Plaintiff provides a list of books in his motion; presumably, these are the books that were rejected by the mailroom. Those books are: (1) Art of Caretta: Hard Candy; (2) Fairy Song, Volume One: A Gallery of Fairies-Spirits and Nymphs; (3) Heavenly Bodies; (4) Natural and Naked Girls Uncensored; (5) Color Me Mask; and (6) New Erotic Photography.[2] (*Id.*, PageID.29.) In a supplement to that motion filed on December 13, 2021, Plaintiff suggested that he only had a week and a half left for the books to be held at the front desk, and that the MDOC "ha[d] already tried to have [him] send the books home." (ECF No. 13, PageID.15.)

The crux of Plaintiff's complaint is that the Defendants failed to follow the MDOC's policies and procedures regarding the rejection of prisoner mail. Those policies and procedures are set out in MDOC Policy Directive 05.03.118 (eff. Mar. 3, 2018). With regard to

---

[2] Certainly, "it is dangerous to judge a book by its cover . . . ." *United States v. Michael*, 882 F.3d 624, 629 (6th Cir. 2018). Nonetheless, the covers and the titles of Plaintiff's reading list are revealing—as are the descriptions of the books. *See* https://amazon.com (search each of the titles listed by Plaintiff). The Court does not rely on anything more than the titles of the books alleged by Plaintiff, however, in conducting this preliminary review.

4

books, magazines, and other publications, the policy provides that prisoners may receive them only if:

> 1. Ordered by a member of the public from an internet vendor identified in Attachment A or from the publisher and sent directly to the prisoner by the vendor or publisher,
>
> 2. Ordered by the prisoner from a vendor identified in Attachment B or from the publisher and sent directly to the prisoner from the vendor or the publisher, or
>
> 3. The prisoner is approved to take a correspondence course pursuant to PD 05.02.119 "Correspondence Courses," and the publication is sent directly from the approved correspondence school.
>
> All prisoner orders must be through established facility ordering procedures. Under no circumstances shall prisoners in a correctional facility be permitted to order a publication from an internet vendor

*Id.*, ¶ Z.  The policy calls for rejection of mail "that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner."  *Id.*, ¶ NN.  Several categories of mail are considered to pose such risks under all circumstances, including mail that violates ¶ Z, certain nude photographs, photographs depicting actual or simulated sex acts, mail encouraging the commission of criminal activity, and mail depicting or appearing to promote sexual acts with children.  *Id.*

The policy directive establishes a procedure that is to be followed if mail is believed to violate the restrictions that includes notice and a hearing.  *Id.*, ¶¶ VV–AAA.  When a newspaper, magazine, book, or other publication is determined to violate the restrictions, there are additional steps involving the warden and the CFA Deputy Director that result in a publication being placed on the "Restricted Publications List."  *Id.*, ¶¶ BBB–DDD.  Publications on the list are rejected without hearing.  *Id.*  The procedure provides for appeals of the rejection decision.  *Id.*, ¶¶ EEE–FFF.  If the rejection is upheld, the publication can be returned at the prisoner's expense, mailed to someone else at the prisoner's expense, stored for a period of time so that the prisoner may

5

designate someone to pick up the publication, or, if none of those options are feasible, destroyed. *Id.*, ¶ HHH.

Plaintiff states that Defendants failed to follow and adhere to policy and procedure, but he does not explain what part of the policy and procedure Defendants failed to follow. He simply describes Defendants' failures as a violation of due process and an abuse of power. He asks the Court for "justice." (Compl., ECF No. 1, PageID.11.) He also asks the Court to compel Defendants to follow the MDOC policies and for an award of costs. (*Id.*)

## II.     Failure To State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     Conclusory Allegations

As noted *supra*, Plaintiff's complaint is devoid of any factual allegations regarding how Defendants were involved in the alleged violations of his constitutional rights. Rather, Plaintiff vaguely asserts that staff at LCF violated his rights. Plaintiff's use of the collective "staff" fails to plausibly suggest that the named Defendants were personally involved in the decision to reject the various books that Plaintiff attempted to receive through the mail. Where an individual is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). A claimed constitutional violation must be based upon active unconstitutional behavior. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Plaintiff's assertions are simply

7

insufficient to allege a plausible constitutional claim against Defendants. For that reason alone, Plaintiff's complaint is subject to dismissal. However, even if Plaintiff alleged a more direct connection between the conduct of which he complains and Defendants, he still fails to state a claim for the reasons set forth below.

**B.     Due Process**

The Court is called upon to read Plaintiff's complaint indulgently, but there are limits. The Court has no "duty . . . to create a claim which [the litigant] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) (quoting *Case v. State Farm Mut. Automobile Ins. Co.*, 294 F.2d 676, 678 (5th Cir. 1961)); *see also Kelley v. Burton*, 792 F. App'x 396, 397 (6th Cir. 2020) (quoting *Clark*).

Plaintiff's due process claim consists of the following: "right to due process . . . failure to follow policy . . . ." (Compl., ECF No. 1, PageID.7.) And then, in describing the claims Plaintiff raised to exhaust his administrative remedies he again states "right to due process." (*Id*., PageID.12–13.) Beyond that, Plaintiff mentions abuse of power, unfair treatment, and failure to follow policy. That is the full extent of his complaint.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

To the extent Plaintiff contends that he was deprived of his property without due process, his claim fails on two levels. First, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327

8

(1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MDOC Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers."  Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Moreover, Plaintiff himself indicates that he had the option to have the books in question sent home.  (ECF No. 13, PageID.15.)  Plaintiff does not

9

allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Second, Plaintiff does not identify what process he was afforded or what process he was denied. He merely states that Defendants failed to follow the MDOC policy. Certainly, the policy includes elements of process that might be due before a deprivation of property, such as notice and an opportunity to be heard. *See, e.g.*, *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) ("Notice and an opportunity to be heard remain the most basic requirements of due process."). But that does not mean that the requirements of MDOC policy are coextensive with the requirements of due process. Put simply, stating that conduct violates the MDOC policy is not the same as stating that conduct violates due process; yet Plaintiff seems to equate the two. Because Plaintiff has not alleged how Defendants fell short of the requirements of the MDOC policy is impossible to discern from Plaintiff's allegations if the Defendants violated the requirements of due process. For that reason also, therefore, Plaintiff has failed to state a claim for deprivation of his property without due process of law. Moreover, this failure in Plaintiff's allegations applies not only to a claim regarding deprivation of his property, but also to deprivation of the right to receive mail.

C.     **First Amendment Right to Receive Mail**

Plaintiff does not invoke the protections of the First Amendment. There is no question that the First Amendment applies to a prisoner's receipt of incoming mail; but the right is subject to limitation by legitimate penological interests. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), *abrogated in part on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). The Supreme Court has held that prison regulations which allow a warden to reject publications for good reason, pursuant to specific criteria, do not violate the First Amendment because such regulations are reasonably related to

10

legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Plaintiff's allegations are simply too scant to support a First Amendment claim here.

Emphasizing the extreme deference accorded to prison officials, the Supreme Court stated:

> We deal here with incoming publications, material requested by an individual inmate but targeted to a general audience. Once in the prison, material of this kind reasonably may be expected to circulate among prisoners, with the concomitant potential for coordinated disruptive conduct. Furthermore, prisoners may observe particular material in the possession of a fellow prisoner, draw inferences about their fellow's beliefs, sexual orientation, or gang affiliations from that material, and cause disorder by acting accordingly. As the Deputy Solicitor General noted at oral argument: "The problem is not. . . in the individual reading the material in most cases. The problem is in the material getting into the prison." In the volatile prison environment, it is essential that prison officials be given broad discretion to prevent such disorder.

*Id.* at 412–13 (citations omitted).

The Sixth Circuit, in unpublished decisions, has addressed challenges to prior versions of MDOC Policy Directive 05.03.118. In 2003, the Sixth Circuit applied *Turner* and concluded that the 2001 policy was reasonably related to the legitimate penological interest of prison security. *See Ward v. Jones*, No. 02-1924, 2003 WL 1795736, at *1–2 (6th Cir. Mar. 31, 2003) (analyzing the portion of the policing prohibiting "photographs depicting actual or simulated sexual acts"). The Sixth Circuit noted that prisoners in Michigan could still receive less explicit photographs of an arguably sexual nature. *Id.* The Sixth Circuit also upheld a prior version of MDOC Policy Directive 05.03.118 in *Rogers v. Martin*, 84 F. App'x 577 (6th Cir. 2003). In doing so, the *Rogers* court noted:

> [T]he MDOC policy did not violate the First Amendment because: (1) it was rationally related to the goal of a safer prison environment; (2) prisoners had alternative means of acquiring sexually explicit materials such as written descriptions of sex acts and nude photographs that do not depict sexual acts; (3) accommodating the prisoners' right to receive sexually explicit materials in the form of photographs of sexual acts could adversely affect prison guards, other inmates, and the allocation of prison resources by creating a sexually charged

11

>atmosphere; and (4) redacting every publication containing photographs that violate the rule is not a ready alternative to disposing of the offending magazines because of the administrative burden of case-by-case redaction. *See Turner v. Safley,* 482 U.S. 78, 90–91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Although Rogers argued to the contrary, the defendants were not required to submit evidence that the banned materials actually caused problems in the past or are likely to cause problems in the future, as long as it is plausible that they believed the policy would further a legitimate objective. *See, e.g.*, *Mauro v. Arpaio,* 188 F.3d 1054, 1060 (9th Cir.1999).

*Rogers*, 84 F. App'x at 579. This Court has also previously upheld MDOC Policy Directive 05.03.118. *See, e.g.*, *Richards v. Snyder*, No. 1:14-cv-84, 2015 WL 3658836, at *8–11 (W.D. Mich. June 12, 2015) (analyzing the 2013 version of Policy Directive 05.03.118); *Johnson v. Deeren,* No. 2:12-cv-205, 2012 WL 6019365, at *11–12 (W.D. Mich. Dec. 3, 2012) (finding that the restriction of *Penthouse* for including "sexual simulated acts" in MDOC Policy Directive 05.03.118, ¶ MM(14) (effective Sept. 14, 2009) was clearly related to a legitimate penological interest); *see also Houston v. Caruso,* No. 1:07-cv-960, 2008 WL 5235869, at *7 (W.D. Mich. Nov. 24, 2008) (upholding MDOC Policy Directive 05.03.118, ¶ HH(15) (effective Jan. 1, 2006), which prohibited photographs depicting actual or simulated sexual acts by one or more persons).

As noted *supra*, the books Plaintiff attempted to receive through the mail, based on their titles alone, appear to fall within the categories of forbidden mail. And Plaintiff does not contend that his books are acceptable under the MDOC policy. He only claims that Defendants did not follow the proper procedure. Under that circumstance, the Court will not manufacture a First Amendment claim.[3]

---

[3] The Court notes that Plaintiff is currently serving a term of 40 to 60 years after being convicted of first-degree criminal sexual conduct (CSI-I); his victim was an infant. *See People v. Minier*, No. 205282, 1999 WL 33446473, at *1 (Mich. Ct. App. Apr. 27, 1999). Restricting his access to sexually explicit materials would certainly be reasonably related the penological interest of rehabilitation. *See, e.g.*, *Kemper v. Kemper*, 774 F. App'x 307, 309 (7th Cir. 2019); *Roberts v. Apker*, 570 F. App'x 646, 648 (9th Cir. 2014); *Stauffer v. Gearhart*, 741 F.3d 574, 585 (5th Cir. 2014); *Sperry v. Werholtz*, 413 F. App'x 31, 40–42 (10th Cir. 2011); *Rivera v. Rogers*, 224 F. App'x 148, 151 (3d Cir. 2007). That may explain why Plaintiff has declined to make the allegations necessary to state a First Amendment claim.

### D. Equal Protection

Plaintiff also asserts that the rejection of his books constituted "unfair treatment." (ECF No. 1, PageID.7.) Although it may stray over the boundary of creating a claim where none is alleged, the Court will liberally construe the words "unfair treatment" as an attempt to raise an equal protection claim under the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Because the crux of an equal protection violation is the treatment of similarly situated people differently, "[a] plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant aspects.'" *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) (quoting *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015)). In other words, "the comparative [person] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [decision-maker's] treatment of them for it.'" *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Plaintiff, however, fails to allege any facts suggesting that he was treated differently from any similarly situated inmates. Thus, Plaintiff's allegations of "unfair treatment" are simply too conclusory and does not suffice to allege an equal protection violation. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

### E. Abuse of Power

Petitioner's allegation that Defendants abused their power is very much like his statement that Defendants engaged in unfair treatment. Nonetheless, at the risk of creating a claim where none is intended, the Court will liberally construe the words "abuse of power" as an attempt to state a claim that Defendants violated Plaintiff's substantive due process rights.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it violates the decencies of civilized conduct." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)) (internal quotation marks omitted)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013)

14

holding that the explicit protections of the Procedural Due Process Clause foreclosed the plaintiff's substantive due process claim).

Here, Plaintiff's claims appear to be focused on the process established by the MDOC policy. To the extent that the MDOC policy process is coextensive with the protections of the procedural Due Process Clause, the existence of the procedural due process claim forecloses a substantive due process claim. To the extent the MDOC policy goes beyond the protections of procedural due process, there is nothing in Plaintiff's allegations that suggests that Defendants' failure to follow the policy is even mildly shocking to the conscience.

### F. Violation of MDOC Policy

Finally, Plaintiff's most clearly stated claim—although sorely lacking in specifics—is that Defendants violated MDOC policy. However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Claims under Section 1983 do not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Courts have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his allegations of failure to follow MDOC policy as a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings,*

15

*Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 455 (6th Cir. 2021) (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (recognizing that once a federal court no longer has federal claims to resolve, it "should not ordinarily reach the plaintiff's state-law claims)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon*, 465 F.3d at 728 ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.") (internal quotations omitted). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claims, if any, will be dismissed without prejudice.

## III. Pending Motion

As noted above, Plaintiff has filed a "motion to have this Court order the Warden (Morrison) to hold all book[s] in question [regarding accompanying] lawsuit." (ECF No. 4.) Plaintiff essentially seeks for the Court to direct Defendant Morrison to keep the rejected materials at LCF. In light of the Court's dismissal of Plaintiff's complaint, he is not entitled to such relief.

16

Moreover, Plaintiff admits that he was given the opportunity to have the books shipped home or to another location. (ECF No. 13.) Plaintiff's motion (ECF No. 4) will, therefore, be denied.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims, if any, will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them. The Court will also deny Plaintiff's "motion to have this Court order the Warden (Morrison) to hold all book[s] in question [regarding accompanying] lawsuit." (ECF No. 4.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   March 15, 2022                              /s/ Ray Kent
                                                     Ray Kent
                                                     United States Magistrate Judge